*556 OPINION of the Court, by
Judge Losan.
The appellees exhibited their bill for the specific performance of a contract, alleged to have been made in the year 1774, between Hancock Taylor, under whom they (⅛⅛5 and Griffin Peart» the ancestor of the appellants, y-QQ „art; Qf a certain tract of 2000 acres of land, which they allege Peart had agreed to give m consider- *557 ■ttion of Taylor’s surveying at his cost, and doing every thing necessary for carrying into grant, and securing the said land, in virtue of a military warrant granted to said Peart for 2000 acres, under the king’s proclamation OÍ 1763.
, ten by on*"!» ⅛ parties to a. thl/d P«(°n» the "contract1*!; Rating the ⅜ is tgainft ⅛ oart ty so acknow. f“P-[⅛ *original contract,
T- easa6e;i ⅛ ⅛4°⅛ P. to pay the ex:Pe?ces « ¡^gran^'an!: to build houfes “d dpl“t or" faTer t]’e“ forfeiture ac-cordlfS t0 tilc mutton and°co*I onisation act; T-ta h*ve 7QO acres oi the }amj. T< {üí.m veyed Und 0⅝ tlle ;&r madl. ⅛ veys ua ]⅛. kUle’d Ty The Indians Wore' he returned the iurveys^to ^the veyor ⅜ from the field notes however, made out by the principal fur-veyor for the horn and the grants iffued to **"
*557 Taylor in the year 1774, executed the survey in Ken-lucky on said warrant. In the same year he was killed by ¿the Indians in Kentucky, but the surveys executed by him were returned to the surveyor’s office by those who were oi ms company ; and upon one oi those surveys a patent issued to Peart, in March 1781, for 2000 acres, a part of which is the subject of the present controversy. The appellees allege the loss of the written agreement between the parties, that they were uninformed of the state of the said Hancock’s affairs, and that many years had passed before they were informed of the terms of the contract, not having discovered the letter by them referred to as a part of their bill, until about a month before they commenced suit.
The answers admit nothing which is essential to the complainants’ right of recovery. It will therefore be proper to examine in the first place, whether the proof in the cause establishes a contract between the parties for a specific part of the land.
A letter purporting to have been written by Griffin Peart, bearing date the 16th of June, ’83, is the most material evidence in support of the appellees’ right. Col. Preston, the surveyor of Fincastle county, which comprehended the now state qf Kentucky, in the year 1774, put a fee bill into the hands of John Breckenridge, to collect from Griffin Peart, in the year 1783, for the survey of his claim.
Mr. Breckenridge addressed a letter to Peart, in Goochland county, on the subject; and in answer thereto received the one under consideration. This letter acknowledges the receipt of the one from Bree-kenridge, and states that Peart employed Hancock Taylor as a deputy of Preston, and entered into articles of agreement with him, by which Taylor, “ at his own » * it proper charge and cost, was to survey, platt and patent the said lands; to clear lands, build houses, plant orchards, and to do everything necessary* to save and se* cure the said land according to the king’s proclamation and the colonization act,” And that on his part, after *558 ¡for “ had surveyed, platted and patented the sakj lands, and given sufficient security for the faithful performance of the latter,” he was to make him a fee simple to‘700 acres of the said land. Breckenridge it seems heard nothing farther from Peart on the subject of his letter ; he received no part of the fee from him, and knew nothing of his hand writing,
Upon a bill for fpedfic formance by the herrs of 1. heirs of P. thev infia that T. er h¡s reprefen-paid the fee for MF/mg the patent, nor rm-accordlog to contract.
thfactoTiy^ dispenfing wkri improvements formerly required, was o-quivalent to •prrftirmance of ihe agreement to improve.
’i‘rs íeprefen-times having ^Wer’i'fee á»d famished a re-ceipc therefor lililíiaHyVecom plie<t with the ■figtcement j neither the length of time under the cir-cumftanees of the cafe, nor the frnaii consideration compared with the present value of the lands form any objection to a fpe* cifk execution.
*558 peart’s heirs state that they were infants at the death of their ancestor, ¾|⅝ are unacquainted with his hand writing, and therefore require proof of the genuineness ers are introduced bv them of the letter. JMopnpe his writing, nor any proof whatever, to negative the authenticity of this letter. But by the appellees it is prob,y one witness, that he was acquainted with the hand writing oi Peart, and believes this letter to be m his hand writing, and as. such selected it from among se^era^ P'eces °f writing precented to him with the sig-concealed. From this, evidence, and the circumstances detailed in Breckenridge’s deposition, we can entertaintio doubt with regard to the letter having been written by Feart. It becomes necessary, therefore, to examine as to the equitable demand it furnishes aj,ajnst Pome’s heirs for a specific performance. But before we proceed to this examination, n vyill be proper to,notice an objection taken for want of an affidavit j-i0S3 ¡-^g original writing between the parties,
When relief is sought in chancery lor want ot a deed in a case properly cognizable at law, the objection is certainly well founded; because the want of the deed is the only foundation to draw the cause from lavy to equity, and entitle the court tp jurisdiction ; and the jurisdiction shall not lie translated withou.t oa,th made of the loss of the deed. But where the bill seeks a dis-Coyery only, or the court has jurisdiction, of the subject, such affidavit ’doe* not seem indispensable — Hind’s Prac. 37, 1 Vern. 247. The bill in this case goes upon rnatter proper for the jurisdiction of a court of chan., ceryr and.the case is therefore not within the rule which, requires an affidavit. ,
How far it may be proper tet let in other evidence than the original writing between the parties, is a. distinct subject of inquiry. Did not the circumstances of' |th.e case satisfactorily -show- that the appellees;have no»t Come to the possession of the writing, evidence of an *559 inferior character ought not to be admitted. We think however, that the ink Mice is clear, from the circumstances in the cause, that the writing has been lost in some manner unknown to the appellees ; and that other evidence is therefore admissible. To turn the party out of court for want of an affidavit of such loss, when we are already satisfied, irom the circumstances in the cause, that they are uninformed with respect to its loss, could be excused only by the imperame command of law. We shad therefore 'proceed to the investigation of other points in the cause.
Specific performance
It has been contended that the letter from Peart ought not to be received as evidence, because of its mutilated state. But it is by no means unintelligible; its fair import can be collected with certainty ; us mutilation is not chargeable to the appellees, and is such as might be expected from its age and ordinary usage.'
Again it was argued, that a letter does not carry with it that solemnity of contract, which aioue should induce a sound and well regulated discretion in a court of chancery to interpose in compelling a specific performance ; but especially a letter not addressed to the party, but to a stranger.
The letter is not the foundation of the contract. It is resorted to irom necessity in the casual absence of the written contract between the original parties ; and so far as it is clear and explicit, it is surely entitled to much credit in supplying that loss. Clear and indubitable proof of the declarations of a par tv, where written evidence has been unfortunately lost, would be competent to merit relief ; a fortiori must those declarations be when reduced to writing and signed by the partv, though in the form of a letter.
With this evidence of contract, we come next to consider the equity of the ease before us. The great inequality between the consideration to have been given, and the present value of the l>nd, is urged against an equitable interference. The mci -used \ alee of the land is owing to circumstances am ¡ to either,, but,common to both parties, and ‘vnio'ec pially beneficial to both in this contest.- lb- coLtract therefore is, in this respect, left to be decided o.i the same principles which governed at the time it was made.
*560 By that contract Taylor was made interested in searching out good land, and securing the same ; the land to be appropriated was several hundred miles distant, inconvenient and exposed to danger ; Taylor was to employ the necessary hands, to pay the expences* undergo the fatigue and risk inseparable from the undertaking or an advantageous appropriation of the warrant. And it might be asked for what ? For a consideration confessedly of but little value at that period. But the contract must be judged of under the circumstances it was made ; and under circumstances like those mentioned, it could scarcely be considered a hard or unconscientious bargain against Peart. To this court it seems to have been fair, reciprocal and reasonable ; and if, in its essential and substantial parts, performed by Taylor, it ought to be decreed specifically. It remains to inquire how far Taylor performed his part of the contract.
It is objected that the land in contest was not surveyed by Taylor for Peart ; and that therefore his representatives were not entitled to any part thereof.
It appears that Taylor surveyed for Peart, land on the Ohio, and surveyed that in controversy on Elk-horn, for another person. His field notes or memorandum book of surveys, thus designated the surveys. That book containing those surveys was returned to the principal surveyor’s office ; but the plat and survey made out therefrom in virtue of Peart’s warrant, was applied to the land which had been surveyed on Elkhorn, and upon a plat and certificate thereof returned to the register’s office, the patent issued to Peart.
So that Peart’s heirs have derived the full benefit of the contract from the labor and performance of Taylor.. in executing the survey on Elkhorn ; and are therefore in equity and good conscience, bound to fulfil the contract on the part of their ancestor.
It has been also objected, that Peart had paid a fee for the procurement of his patent ; and for the failure of Taylor’s representatives to pay, they are not entitled to recover in equity. That such a fee was paid is proven ; but it does not seem material to inquire into the necessity- or legality of that payment. For it appears from Peart’s letter, that in the year 1775, he received « “ receipt from John Lee, ⅜ relation and partner of Tay. *561 lot’s,” as he states, in these words, “ received- of John JLer, Griffin Peart’s survey of 2000 acres of laud in Fincastle county, together with 10s. and Qd. the patent fee, signed by one of the young men in the office where the land papers were kept at that time.”
This is surely sufficient to shew that the present objection is without weight. Furnished with this receipt, Gr'ffin Psart might nave obtained his patent. Whether this receipt was transmitted with his friend, who in 1781, paid another fee, and obtained for him his patent, is not shown. But at most, under the circumstances attending the transaction, the sum paid, together with interest, was all that in good conscience Peart or his heirs could have a right to demand of Taylor’s representatives.
Another, and perhaps the most formidable objection to the appellees’ right of recovery, was the want of the improvements, which by the contract Taylor was to have made on said land. By the laws existing at the time of said contract, certain improvements were required in proportion to the quantity of land to save the same from becoming lapsed or forfeited for not complying with the condition of cultivation and improvement mentioned in the grants thereof. But by an act of the Virginia legislature, passed in 1779, it is declared, that the proprietors of lands within the said commonwealth might no longer be subject to any servile, feudal or precarious tenure ; and to prevent the danger to a free state from perpetual revenue, that the reservation of royal mines, of quit rents, and other reservations and conditions in the patents or grants of land from the crown of England or of Great Britain under the former government, shall be null and void, and that the same should be held in absolute and unconditional property, as the lands thereafter granted by the commonwealth ; and that no petition for lapsed land, should be received on account of any failure or forfeiture alleged to have been incurred after the 29th of September, 1775.
Under the operation of these laws, it remains only to inquire, whether the improvements mentioned in the contract formed an essential pari or inducement to it, farther than was necessary to save the land from becoming lapsed or forfeited ? .
*562 By the contract, it seems that Taylor was bound t® clear Hock, build houses, plant orchards and to do every tinny necessary to save and secure the said land according to the king’s proclamation, and the colonization act.
If those stipulations were required for the purpose also of adding value to the land, they must certainly deserve .great weight in the present contest. But how much land, what descnphon ol Leise-y or .B-at sorter number of fruit trees, were to be chared, made and planted ? The whole is left urn .1 .in. wuh regard to a supposed or definite veloe ol the Lad. Bat to this inquire a measure is prese-’ted, which seems at once to evince the flue ob;rr* of shat provision in the contract n h Pa to r>v< c of ecr:ire the land f without this, the r.j.'I'te n lofei't imcert-on >n its extent or value, and to"M tL ’■ \.,e le'.a no substantial or essential part of the agreement.
But the land seems to be safe and secured to Peart and his-heirs, from the act, the labor, money and blood ol Taylor ; and shall they, against the great and leading objects to that contract, be permitted to ward off their claim, upon trivial and mere nominal pretences ? Equity and good conscience forbid it.
Bur. it is again objected, that the staleness and dormancy of this demand is opposed to a specific recovery. When did the evidence of right come to their knowledge ? It has already been mentioned, but shortly pr^eding the commencement of a suit lor a recovery. Thi re has been nothing to manifest a dereliction of claim ; not such Iving back as works an injury to the appellants’ or should prejudice the appellees’. The ap-pcl'unts refused a compliance many years ago ; they required every thing which could force from them the title, and it now ill becomes them to urge the objection ol delay, which is so evidently to be accounted lor free from blame to the appellees.
Decree affirmed, with costs.